UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTINE KEITT,

                      Plaintiff,

-against-

SODEXO, INC.,

                      Defendant.

**Case No. 19 cv 1367**

**COMPLAINT FOR DAMAGES**

**JURY TRIAL DEMAND**

Plaintiff, Christine Keitt, by and through her attorneys, The Law Office of Christina Giorgio, hereby complains against Defendant as follows:

## NATURE OF THE CLAIMS

1.    This action is brought to remedy, *inter alia*, the unlawful discrimination on the basis of sex/gender to which Defendant Sodexo Inc. (hereinafter "Defendant" or "Sodexo") subjected Plaintiff, with respect to the conditions and privileges of her employment, along with the hostile work environment, retaliation Plaintiff faced as a result of her opposition to these unlawful practices, and her wrongful termination at the hands of Defendant. Through its unlawful and discriminatory conduct, Defendant violated, Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. § § 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), and New York State Human Rights Law, New York Executive Law,§ 290, et seq. ("the Executive Law"); and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

1

2. Plaintiff seeks declaratory relief with respect to each claim, as well as, monetary relief, including but not limited to compensatory and punitive damages; attorney's fees and the costs associated with this action; together with any and all other appropriate legal and equitable relief pursuant to applicable state laws.

## JURISDICTION AND VENUE

3. This Court has jurisdiction based on 28 U.S.C § 1331 (Federal Question) and 28 U.S.C. § 1332 Diversity Jurisdiction as Plaintiff and Defendant are citizens of different states and the value of the controversy exceeds $75,000, exclusive of interest and supplemental jurisdiction over state law claims under 28 U.S.C. § 1367.

4. On or around November 15, 2018, the Equal Employment Opportunity Commission ("EEOC") mailed Plaintiff her Right to Sue Letter from the Charge of Discrimination Plaintiff filed with the EEOC on April 25, 2018. Plaintiff's EEOC Charge Number is 520-2018-0058.

5. Plaintiff has satisfied all administrative prerequisites and is filing this action within ninety (90) days of receiving her Right to Sue Letter pursuant to 29 CFR § 1601.28.

6. Venue is proper in this District based on 28 U.S.C. §1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred within the County of Westchester, State of New York, within the Southern District of New York.

## PARTIES

7. At all times relevant to this Complaint, Plaintiff was and still is an individual female residing in the State of New York, County of Westchester.

8. At all times material, Sodexo was and still is a business entity authorized to do business in the State of New York, with its headquarters in Gaithersburg, Maryland, 20878.

9. At times relevant to this Complaint, Defendant meets the definition of an "employer" under all applicable federal and state statutes.

## FACTUAL ALLEGATIONS

10. Sodexo hired Plaintiff as a housekeeper on September 5, 2017 to work at Westchester Hospital.

11. Sodexo initially hired Plaintiff to work 3 days a week but later increased her shifts to 6 days a week.

12. At all times, Sodexo employee Damion Crawford was Plaintiff's supervisor and had supervisory authority over her.

13. At all times, Sodexo employee Harold Warner was Plaintiff's supervisor and had supervisory authority over her.

14. At all times, Sodexo employee Ricardo Francis was Plaintiff's supervisor and had supervisory authority over her.

15. Shortly after starting work at Westchester Hospital as a Sodexo employee, Plaintiff started experiencing a hostile work environment associated with her female gender at the hands of her supervisors and co-workers.

16. First, upon reporting to work in the "pink room" where the cleaning supplies are kept, Supervisors Warner, Crawford and Francis would loudly discuss what co-workers they had sex with or the ones they intended to have sex with.

17. Plaintiff was made aware of the fact that female hires were expected to have sex with their supervisors in order to remain employed and be promoted.

18. Plaintiff found the sexually charged conversations highly offensive, but as all the participants were her supervisors, she felt there was no point in reporting her objections to them.

19. To keep her job, Plaintiff did her best to mind her own business and steer clear of the sexual conversations.

20. In September 2017, while at work, Supervisor Crawford ordered Plaintiff to come out of the room she was cleaning. Upon reporting to him, Supervisor Crawford asked Plaintiff if she used to wear a tongue ring.

21. When Plaintiff confirmed she had, Supervisor Crawford stated that he could tell because of Plaintiff's slight lisp that tongue rings can cause.

22. Then Supervisor Crawford stated that Plaintiff should allow him to come home with her and show him what she could do with her tongue.

23. Plaintiff was highly offended and responded that she is married, and that Supervisor Crawford's comments were disrespectful. She stated, "Aren't you married?"

24. Supervisor Crawford said that it did not matter that he was married and that his wife did not need to know. He went on to state, "You can wait for me outside and after I finish work, we can go to a hotel."

25. When Plaintiff refused, Supervisor Crawford stated that he would come to her house.

26. Offended, Plaintiff stated, "Absolutely not" and walked away.

27. Supervisor Crawford yelled, "You cannot leave; I'm not done with you – I'm your manager."

28. Later that day, Supervisor Crawford came up to Plaintiff and stated that Plaintiff could not refuse him like she had.

29. Plaintiff responded that she was not interested in any sexual relationship with Supervisor Crawford and that she did not want him talking sexually with her again.

30. Supervisor Crawford stated that as her manager and a long-term employee, Sodexo would believe him over her and that she was not to walk away from him again.

31. Plaintiff was highly troubled and felt her job was in jeopardy. When she clocked out, a co-worker asked if she was OK, having heard Supervisor Crawford's sexual comments.

32. Plaintiff stated she was very troubled and did not want Supervisor Crawford harassing her or costing her her job.

33. Supervisor Crawford continued to sexually harass Plaintiff, making frequent inappropriate comments about her breasts and buttocks. Plaintiff informed him that his comments were not welcome and asked him to stop.

34. Supervisor Crawford did not stop.

35. Supervisor Crawford also touched Plaintiff's breasts, legs and arms and slapped her buttocks, and tried to kiss her, to all of which Plaintiff objected and stated, "Don't touch me."

36. In October 2017, Sodexo employee Cloyd "Doe" (Cloyd) started sexually harassing Plaintiff, including touching her arms and legs, despite Plaintiff's request that he stop touching her.

37. On one occasion he grabbed Plaintiff in the pink room and put his phone, during a video chat, in front of Plaintiff's face, stating to the person on the other end, "This is the girl I've been talking about."

38. Cloyd also informed Plaintiff repeatedly that he wanted to "suck" Plaintiff's "vagina" and wanted to taste her.

39. Cloyd also threatened to beat her ass and come to her house to "get her".

40. Cloyd stated he wanted to share with Plaintiff "the blessings" and his "rod of correction."

41. Plaintiff complained to Supervisor Crawford about Cloyd's sexual harassment but nothing was done and the harassment continued.

42. Another co-worker, Jamel "Doe" (Jamel), around the same time commenced sexually harassing Plaintiff, touching her arms and legs during lunch breaks.

43. Plaintiff complained to Supervisors Warner, Francis and Crawford about Jamel's sexual harassment, but no corrective action was taken.

44. On one such occasion during lunch in November 2017, Plaintiff demanded that Jamel stop his inappropriate behavior. As her complaints to her supervisors had been disregarded, she felt she had no choice but to tell Jamel that if he did not stop, she would have to tell her husband.

45. Jamel responded, "You can suck my dick" while putting his hand on his crotch and mocking Plaintiff. Jamel stated, "You can get your husband; I'm from the Bronx and not afraid of anybody."

46. Plaintiff reported the comments to Supervisor Crawford, but nothing was done.

47. A few days later, on Thanksgiving, Plaintiff's husband came and picked her up at work.

48. As Plaintiff was exiting the hospital, Jamel exited close behind her.

49. Recognizing Jamel from video that Plaintiff had shown to him, Plaintiff's husband asked to speak to Jamel. During the conversation, Plaintiff's husband stated that his wife had shared that Jamel was disrespecting her, including stating that she could "suck his dick."

50. Jamel admitted having made this lewd comment to Plaintiff.

51. Plaintiff's husband calmly asked Jamel to stop disrespecting his wife and if he wanted to talk to her, he should be respectful.

52. Jamel promptly turned around and lied to his supervisor, falsely claiming that Plaintiff's husband had threatened him.

53. The next day, HR Manager Belcher called Plaintiff into her office to discuss the matter. Supervisor Warner was present.

54. HR Manager Belcher started the meeting by reporting that she heard that Plaintiff's husband was large and chuckled, saying "Please don't bring him here again."

55. Plaintiff responded that it was shameful that she needed to seek protection from her husband because Sodexo had failed to address her complaints about sexual harassment.

56. HR Manager Belcher disingenuously asked, "Why did you not report it?"

57. Plaintiff responded that she had reported multiple accounts of sexual harassment to her managers, including that her Supervisor Crawford was one of the harassers and that no action was taken.

58. Rather than commencing an investigation into Plaintiff's complaints, HR Manager Belcher stated, "Well, what do you expect us to do about it?"

59. Shocked, Plaintiff responded that she wanted the Company to do what it says it would do during orientation – that there's no tolerance for sexual harassment.

60. HR Manager Belcher then stated that if Plaintiff spoke with anyone about sexual harassment and what she had experienced from her co-workers and managers, Sodexo would fire her.

61. Plaintiff informed HR Manager Belcher that she had video proving the sexual harassment.

62. HR Manager Belcher demanded that Plaintiff delete the video, or she would be fired.

63. Within days of the meetings with HR and making further complaints of sexual harassment, Sodexo cut Plaintiffs shifts from six days to three days.

64. Additionally, Supervisors Warner and Francis began to shun Plaintiff, refusing to speak with her. When Supervisor Francis did speak with Plaintiff, he belittled her and threatened to terminate her if she took lunch during regularly scheduled lunch breaks.

65. Sodexo further interrogated Plaintiff's witness and threatened his job if he spoke with anyone about what he witnessed.

66. In December 2017, Plaintiff became extremely ill with a virus and her doctor instructed her not to report to work in her condition.

67. Plaintiff informed Sodexo of her health condition and her doctor's instructions.

68. At first, Sodexo informed Plaintiff that her job was not in jeopardy and that she needed to simply call in sick.

69. Plaintiff remained unable to return to work for several weeks but continued to call in sick.

70. On January 5, 2018, Sodexo terminated Plaintiff's employment on the recommendation of Supervisors Warner and Crawford.

71. The articulated reason for the termination was an absence from work for too long because of her medical condition.

72. The real reason Sodexo terminated Plaintiff was in retaliation of her objection to being sexually harassed at work.

73. Because of Sodexo's actions, Plaintiff felt extremely humiliated, degraded, victimized, and emotionally distressed.

74. Because of the actions and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment without unlawful discrimination entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

75. As Sodexo's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against Sodexo.

76. The above are just some examples of some of the unlawful discrimination and retaliation to which Sodexo subjected Plaintiff.

77. Sodexo's conduct constitutes continuing violations.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e et. seq.,

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. Title VII states in relevant part as follows: SEC. 2000e-2. [Section 703](a) Employer practices, It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individuals race, color, religion, sex or national origin;…

80. Defendant Sodexo engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e et seq., by: (1) discriminating against Plaintiff on the basis of her sex; (2) allowing their employees to discriminate against Plaintiff on the basis of her sex; and (3) creating a hostile work environment that promoted discrimination against Plaintiff on the basis of her sex as alleged above, including but not limited to paragraphs 15- 61.

## AS A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## 42 U.S.C. § 2000e-3(a)
## (RETALIATION)

81. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of [its] employees…because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding or hearing under this subchapter."

83. Defendant Sodexo engaged in the unlawful employment practice prohibited by 42 U.S.C. § 2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions and privileges of her employment because of her opposition to the unlawful employment practices of Defendant as alleged above, including but not limited to paragraphs 62- 72.

## AS A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION IN VIOLATION OF
## NEW YORK STATE EXECUTIVE LAW § 296

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. New York State Executive Law § 296 provides:

It shall be an unlawful discriminatory practice: (a) For an employer, because of an individual's . . . sex, . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or, privileges of employment.

86. Defendant Sodexo engaged in an unlawful discriminatory practice in violation of New York State Executive Law § 296 by discriminating against the Plaintiff because of her sex as alleged above, including but not limited to paragraphs 15 - 61.

### AS A FOURTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER
### NEW YORK STATE EXECUTIVE LAW §296(1)(e)

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. New York State Executive Law §296(1)(e) provides that it shall be an unlawful discriminatory practice for any employer to discharge, expel or otherwise discriminate against any person because she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

89. Defendant Sodexo engaged in an unlawful discriminatory practice by harassing, reducing hours and discharging Plaintiff in retaliation for Plaintiff opposing Defendant's unlawful discriminatory practices in violation of Executive Law § 296(1)(e) as set forth above, including but not limited to paragraphs 62 - 72.

## AS A FIFTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## NEW YORK EXECUTIVE LAW § 296(7)
## (RETALIATION)

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. New York State Executive Law § 296(7) provides: "It shall be an unlawful discriminatory practice for any person engaged in an activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

92. Defendant Sodexo engaged in an unlawful discriminatory practice by harassing, reducing her shifts and then terminating Plaintiff's employment in retaliation for Plaintiff opposing Defendant's unlawful discriminatory practices as alleged herein, in violation of New York State Executive Law § 296(7) as set forth above, including but not limited to paragraphs 62 - 72.

## INJURY AND DAMAGES

93. As a result of the acts and conduct complained of herein, Plaintiff has suffered severe emotional distress as a result of Defendant's unlawful conduct. Plaintiff also suffered and will continue to suffer the loss of a career and the loss of a salary, overtime payments, bonuses, benefits and other compensation which such employment entails, and other future pecuniary losses.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREAS,** Plaintiff prays for the following relief against Defendant:

a. A declaration that Defendant violated Plaintiff's federal and state civil rights

b. Compensatory damages for injuries suffered by Plaintiffs by reason of Defendant's unlawful and unjust conduct, in an amount just and reasonable an in conformity with the evidence at trial in an amount to be determined at trial;

c. Punitive damages against the Defendant to full the extent allowable by law;

d. Damages for emotional distress, physical injury, lost wages, back pay, front pay, statutory damages, medical expense, interest and any other compensatory damages as permitted by law and according to proof at trial;

e. Award of Plaintiff's reasonable attorney's fees and costs under all applicable laws; and;

f. Such other and further relief as appears just a proper.

Dated: New York, New York
February 13, 2019

**THE LAW OFFICE OF CHRISTINA GIORGIO**

By: ___/s/_____

Christina Giorgio, Esq.
30 Wall Street, 8th Floor
New York, NY 10005
(212) 859 - 5010
*Attorney for Plaintiff*